UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CARLENE ARMETTA, et al., | ) |
| Plaintiffs, | ) |
| vs. | ) Case No. 4:15CV1100 JCH |
| STACY DEWALT, | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs Carlene Armetta, David Armetta, and Aspira Marketing Direct, LLC's ("Aspira") (collectively "Plaintiffs")[1] Motion to Dismiss Defendant's Counterclaim for Abuse of Process, filed October 22, 2015. (ECF No. 10). The motion is fully briefed and ready for disposition.

## BACKGROUND[2]

In early 2010, Defendant Stacy DeWalt, then Chief Marketing Officer of Learning Care Group, Inc. ("LCG"), was involved in an effort to hire Plaintiff Carlene Armetta as an employee of LCG. (Complaint ("Compl."), ¶¶ 1, 2). Mrs. Armetta was hired to provide direct mail marketing services for LCG, and she and her husband, Plaintiff David Armetta, previously had provided similar services to LCG as independent contractors through Plaintiff Aspira, a company owned and operated primarily by Mr. Armetta. (*Id.*, ¶ 2).

LCG's Code of Business Conduct and Ethics contains the following conflict of interest

---

[1] Despite their roles as Counterclaim Defendants, for ease of reference Mrs. Armetta, Mr. Armetta, and Aspira will be referred to as "Plaintiffs" throughout this Order.
[2] Portions of the Court's background section are taken from Ms. DeWalt's Counterclaim, to which Plaintiffs have

1

policy:

### **CONFLICTS OF INTEREST**

A conflict of interest may arise in any situation in which an employee's loyalties are divided between interests that, to some degree, are incompatible with the interests of the Company. This includes private and personal interests that might interfere with the company as a whole. All such conflicts should be avoided. The Company demands absolute integrity from all its employees and will not tolerate any conduct that falls short of that standard. The Company expects that no employee will knowingly place himself or herself in a position that would have the appearance of being, or could be construed to be, in conflict with the interests of the Company.

Under guidelines approved by the Board or committees of the Board, certain conflicts of interest may be approved by the Company. The resolution of a potential conflict of interest is not always simple, and employees, directors and officers are required to consult with an Executive Officer, or the Ethics Compliance Officer, if they are contemplating action which may result in a conflict or potential conflict.

\*\*\*

Any request for approval must be in writing to the Executive Officer. All approvals must be in writing and signed by the Ethics Compliance Officer.

\*\*\*

Some of the more sensitive areas of "conflicts of interest" and the Company's related guidelines are as follows:

\*\*\*

### D. Interests in Other Businesses

Unless approved in advance by the Ethics Compliance Officer, neither an employee nor his or her spouse, domestic partner, or any other member of the employee's immediate family may directly or indirectly have a financial interest (whether as an investor, lender, employee, or other service provider) in a competitor, customer, or supplier if that employee or his/her subordinates deal directly or indirectly with that customer or supplier in the course of his/her job with the Company.

Employees with actual or apparent conflict(s) of interest are required to make full disclosure to the Company's Ethics Compliance Officer. The Ethics Compliance Officer will review each disclosure on a case by case basis and make a determination as to which conflict[s] warrant a waiver. . . .

(Counterclaim, attached Exh. 1, PP. 3-4).

---

not filed a response.

According to Ms. DeWalt, Plaintiffs were aware of LCG's conflict of interest policy, and Mrs. Armetta further was informed directly by Ms. DeWalt that if she were to accept the position, Mr. Armetta would be prohibited by the terms of the policy from directly or indirectly having a financial interest in a competitor, customer, or supplier of LCG. (Counterclaim, ¶¶ 11, 12). Ms. DeWalt claims that despite this knowledge, the Armettas engaged in a business relationship with LCG during the period of Mrs. Armetta's employment, whereby they purposely and willfully concealed from Ms. DeWalt and others that Mr. Armetta and Aspira were receiving income for work associated with or requested by LCG. (*Id.*, ¶ 1). Ms. DeWalt maintains Plaintiffs conducted this subterfuge by "conceal[ing] the arrangement Mr. Armetta had brokered with [marketing agencies Vertis Communications and FCL Graphics], by hiding any involvement of Mr. Armetta or Aspira in work these companies performed for LCG, and by concealing the fact Plaintiffs received income outside of Ms. Armetta's salary from marketing work associated with or requested by LCG." (*Id.*, ¶ 3).[3]

In early 2013, Ms. DeWalt left LCG for an employment position in St. Louis, Missouri. (Counterclaim, ¶ 18). Later that year, Plaintiffs discovered that LCG was investigating them for an alleged conflict of interest, and they initiated contact with Ms. DeWalt on the subject. (*Id.*, ¶ 19). Ms. DeWalt informed LCG's internal investigation counsel that she had no knowledge regarding such conflict of interest. (*Id.*, ¶¶ 20, 21). According to Ms. DeWalt, through counsel retained by Plaintiffs to assist them in the internal investigation being conducted by LCG, Plaintiffs began a campaign of harassment toward her, in an effort to force her to change her story to align with their position. (*Id.*, ¶ 22).[4] On November 11, 2013, Plaintiffs' attorney, Joseph M. Pastore, III, sent Ms. DeWalt a letter stating in relevant part as follows:

---

3 Ms. DeWalt maintains "[t]he conflict of interest whereby Mr. Armetta and Aspira received downstream income from Vertis and, later, FCL was never disclosed to Ms. DeWalt or LCG, and it was certainly never approved." (Counterclaim, ¶ 15).
4 In Ms. DeWalt's view, Plaintiffs' position is that "Ms. DeWalt had devised and orchestrated the arrangement whereby Plaintiffs would profit from orders LCG placed with Vertis or FCL." (Counterclaim, ¶ 22).

3

> As you know, we represent Carlene Armetta, David Armetta, and Aspira Marketing Direct, LLC ("Aspira") in a litigation filed by and against the Learning Care Group, Inc. ("LCG").[5] We have attempted, without success, to contact you to discuss your statements made to LCG, and your position regarding the purported "conflict of interest" that existed at LCG as a result of Mr. Armetta's work….
>
> In no small part as a result of the statements that you made to LCG, Carlene and David Armetta are now the subject of litigation seeking to recover payments made to them over the course of the previous four years in which David Armetta provided independent contractor services to LCG. We understand that you may prefer not to discuss this situation with either the Armettas or our firm, but, as a result of your own actions, that is simply not possible.
>
> We would prefer to have an informal conversation with you or your counsel, but will be forced to resort to more formal measures, such as the issuance of a subpoena to take your deposition, if you continue to avoid making a statement on this matter. If necessary, we will pursue you aggressively, including at your place of employment and before regulatory bodies for your false statements. We have no desire to take such actions, but you have given us little other choice at this point in time, and we are determined to do whatever is necessary to vindicate Carlene and David Armetta. We want you to provide the truth.

(Counterclaim, attached Exh. 2, PP. 1-2). Ms. DeWalt asserts Plaintiffs made other statements to her as well, "regarding their intent to take actions adverse to her employment and damaging to her reputation if she did not change her story to align with theirs." (Counterclaim, ¶ 24).

Plaintiffs ultimately served Ms. DeWalt with a subpoena to testify in the litigation pending between Plaintiffs and LCG in the United States District Court for the District of Connecticut.[6] (Counterclaim, ¶¶ 25, 27). Ms. DeWalt asserts Plaintiffs arranged for a process server to arrive at the offices of her employer to serve the subpoena, in an effort to intimidate and embarrass her. (*Id.*, ¶ 28). Despite this attempt, Ms. DeWalt maintains she testified truthfully in the face of harassing questioning, including a threat to depose her minor child. (*Id.*, ¶ 26).

---

5 According to Plaintiffs, after LCG's internal investigation Mrs. Armetta was fired, and subsequently sued by LCG for fraud. (Compl., ¶ 5). That suit is still pending in the United States District Court for the District of Connecticut, and Plaintiffs have countersued for fraud on the part of LCG. (*Id.*).
6 Ms. DeWalt claims Plaintiffs also served a subpoena on Ms. Virginia McDowell, Chief Executive Officer of Ms. DeWalt's current employer, purportedly to determine any false statements Ms. DeWalt may have made during her

4

On July 16, 2015, Plaintiffs initiated the instant suit against Ms. DeWalt, in which they recount a different version of events. Specifically, Plaintiffs maintain LCG informed Ms. DeWalt that upon Mrs. Armetta's employment, LCG should no longer work with Mr. Armetta or Aspira. (Compl., ¶ 2). Plaintiffs allege that despite receiving this directive, Ms. DeWalt instructed Mr. Armetta and Aspira to continue to provide marketing and direct mail service to LCG through outsourced print vendors, and to "roll" their services into the invoices from the print vendors so that LCG could compensate them through such vendors. (*Id.*, ¶¶ 2, 27).

Plaintiffs allege that in August 2013, LCG initiated an internal investigation into the alleged conflict of interest between Mrs. Armetta, as an employee of LCG, and Mr. Armetta and Aspira, as providers of services to LCG. (Compl., ¶ 40). Mrs. Armetta eventually was terminated from her position at LCG due to the alleged conflict of interest, and she claims such termination deprived her of her bonus and future wages, and blemished her reputation. (*Id.*, ¶¶ 41, 42). Plaintiffs further allege that LCG has refused to remit payment for certain services provided by Mr. Armetta and Aspira and invoiced by FCL, and thus the two have been unjustly denied hundreds of thousands of dollars in receivables. (*Id.*, ¶ 43). Based on the foregoing, Plaintiffs assert causes of action based on common law fraud (Count I), negligent misrepresentation (Count II), and violation of the Connecticut Unfair Trade Practices Act (Count III), against Ms. DeWalt.

On October 1, 2015, Ms. DeWalt filed her Answer, Affirmative Defenses, and Counterclaim. (ECF No. 8). As support for her claim of abuse of process, Ms. DeWalt alleges as follows:

> 31.     Plaintiffs/Counterclaim Defendants Carlene Armetta, David Armetta, and Aspira Marketing Direct, LLC have made an illegal, improper, perverted use of

---

interview to obtain employment. (Counterclaim, ¶ 27).

the legal process in filing their Complaint against Ms. DeWalt, including the numerous false allegations they make therein, and have made other improper uses of legal process as well, including the use of subpoenas in related litigation to intimidate and harass Ms. DeWalt.

32. Plaintiffs/Counterclaim Defendants had an improper purpose in exercising such illegal, perverted, improper use of process, namely to intimidate and harass Ms. DeWalt in an effort to compel her to give false testimony to benefit Plaintiffs/Counterclaim Defendants in related litigation pending in the United States District Court for the District of Connecticut.

(Counterclaim, ¶¶ 31, 32).

As noted above, Plaintiffs filed the instant Motion to Dismiss Defendant's Counterclaim for Abuse of Process on October 22, 2015, claiming Ms. DeWalt's Counterclaim should be dismissed for failure to state a claim for abuse of process. (ECF No. 10).

## **STANDARD FOR MOTION TO DISMISS**

In ruling on a motion dismiss, the Court must view the allegations in the Complaint in the light most favorable to Plaintiffs. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). The Court, "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). The Complaint's factual allegations must be sufficient "to raise a right to relief above the speculative level," however, and the motion to dismiss must be granted if the Complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Furthermore, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555 (pleading offering only "labels

and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do)).

## **DISCUSSION**

To state a claim for abuse of process Ms. DeWalt must allege three elements: "(1) [Plaintiffs] made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) [Plaintiffs] had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted." *Arbors at Sugar Creek Homeowners Ass'n v. Jefferson Bank & Trust Co., Inc.*, 464 S.W.3d 177, 188 (Mo. banc 2015) (internal quotations and citation omitted). "'Stated another way, the test as to whether there is an abuse of process is whether the process has been used to accomplish some end which is outside the regular purview of the process.'" *Nichols v. Harbor Venture, Inc.*, 284 F.3d 857, 862 n. 4 (8th Cir. 2002) (quoting *Ritterbusch v. Holt*, 789 S.W.2d 491, 493 n. 1 (Mo. 1990) (en banc)).

> In assessing abuse of process claims, Missouri courts consider "whether the process has been used to accomplish some unlawful end or to compel the opposite party to do some collateral thing which he could not be compelled legally to do." *Duvall v. Lawrence*, 86 S.W.3d 74, 85 (Mo. Ct. App. 2002). Alternatively stated, "the privilege of process may not be used for an unlawful purpose such as using the litigation to extort money or anything of value from another." *Owen v. Owen*, 642 S.W.2d 410, 414 (Mo. Ct. App. 1982). However, a plaintiff is not liable if he has "done nothing more than pursue the lawsuit to its authorized conclusion regardless of how evil his motive might be." *Crow [v. Crawford & Co.*, 259 S.W.3d 104, 117 (Mo. Ct. App. 2008)]. In other words, the mere fact that a plaintiff may have had an ulterior motive in bringing a suit is not sufficient to show abuse of process. *See id.*

*Lasco Foods, Inc. v. Hall and Shaw Sales, Marketing & Consulting LLC*, 2009 WL 3834099, at *1 (E.D. Mo. Nov. 16, 2009). *See also Robinett v. Tarr*, 2015 WL 5785828, at *2 (E.D. Mo. Oct. 2, 2015) (quoting *Wells v. Orthwein*, 670 S.W.2d 529 (Mo. Ct. App. 1984)) (emphasis added) ("'If the action is confined to its regular and legitimate function in relation to the cause of

action stated in the complaint there is no abuse *even if the plaintiff had an ulterior motive in bringing the action, or if he knowingly brought suit upon an unfounded claim.*'").

Upon consideration the Court holds that with her claim, Ms. DeWalt fails to demonstrate the first element of her cause of action for abuse of process. Instead, the Court finds that with respect to their action in filing suit against Ms. DeWalt, Plaintiffs merely employed the judicial process to accomplish an end intended by law, and they are entitled to pursue it to its authorized end. *See Ulrich Medical USA, Inc. v. Dickman*, 2015 WL 5886109, at *3 (E.D. Mo. Oct. 8, 2015); *Robinett*, 2015 WL 5785828, at *2. Ms. DeWalt's allegation that Plaintiffs had an ulterior motive in filing suit against her does not create a cause of action for abuse of process. *See Robinett*, 2015 WL 5785828, at *2; *see also Ulrich Medical*, 2015 WL 5886109, at *3 (citation omitted) ("Even a suit filed with bad intentions will not support an action for abuse of process."); *Federal Pharmacal Supply, Inc. v. Murry*, 352 F.Supp. 278, 281 (W.D. Mo. 1972) (cited with approval in *Nitcher v. Does*, 956 F.2d 796, 800 (8th Cir. 1992)) (defendant's allegation that plaintiff brought suit solely to harass defendant does not allege a "willful act" sufficient to state a cause of action for abuse of process).

Furthermore, the Court finds that Plaintiffs' maintenance of their suit at this juncture in the litigation is neither unwarranted nor unauthorized. *Ulrich Medical*, 2015 WL 5886109, at *3. "Maintaining a cause of action can constitute an abuse of process where further litigation 'could not have accomplished any purpose contained in the petition.'" *Id.* (quoting *Guirl v. Guirl*, 708 S.W.2d 239, 246 (Mo. App. 1986)). In the instant case, however, unlike in *Guirl* (where no further relief could be obtained), Ms. DeWalt has tendered no form of requested relief to Plaintiffs, and thus further litigation may accomplish the purpose stated in Plaintiffs'

Complaint.  *Id.*  Under these circumstances, maintaining the suit is authorized by law, and does not constitute an abuse of process.  *Id.*

Finally, for similar reasons the Court finds Ms. DeWalt fails to state a cause of action for abuse of process with her claim that Plaintiffs used subpoenas in the related litigation to intimidate and harass her into giving false testimony designed to benefit Plaintiffs.  In other words, while Ms. DeWalt ascribes evil intent to Plaintiffs, she does not allege they engaged in actions they were not entitled to pursue in the regular course of litigation.  This is especially true in light of Plaintiffs' attorney's assertion that while they intended to pursue Ms. DeWalt "aggressively", they wanted her to "provide the truth" in her testimony.  (Counterclaim, attached Exh. 2, P. 2).  Under these circumstances, the Court again finds Ms. DeWalt fails to state a claim for abuse of process.  *See OptiStreams, Inc. v. Gahan*, 2006 WL 829113 (E.D. Cal. Mar. 28, 2006).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Dismiss Defendant's Counterclaim for Abuse of Process (ECF No. 10) is **GRANTED**.


Dated this 23rd Day of November, 2015.


/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE